**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **SAN ANTONIO BAY ESTUARINE** | ) | Civil Action No. 6:17-cv-00047 |
| **WATERKEEPER and S. DIANE WILSON,** | ) | |
| | ) | |
| Plaintiffs, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | **FOR DECLARATORY AND** |
| vs. | ) | **INJUNCTIVE RELIEF AND CIVIL** |
| | ) | **PENALTIES** |
| **FORMOSA PLASTICS CORP., TEXAS, AND** | ) | |
| **FORMOSA PLASTICS CORP., U.S.A.** | ) | (Federal Water Pollution Control Act, |
| Defendants. | ) | 33 U.S.C. § 1251 et seq.) |
| _____ | ) | |

**INTRODUCTION**

1.      San Antonio Bay Estuarine Waterkeeper ("Waterkeeper") and S. Diane Wilson
(collectively "Waterkeepers" or "Plaintiffs") bring this enforcement suit under section 505(a)(1)
of the Clean Water Act, 33 U.S.C. §1365(a)(1), against Formosa Plastics Corporation, Texas,
and Formosa Plastics Corporation, U.S.A (collectively "Formosa," or "Formosa Plastics") for
illegally discharging plastic pellets, polypropylene and polyethylene powders, and any other
floating powders (collectively "plastics") through its stormwater and wastewater into Cox Creek
and Lavaca Bay in violation of Formosa's Texas Pollutant Discharge Elimination System
("TPDES") permit. These violations have occurred and are continuing to occur at Formosa's
2,500-acre plastics manufacturing plant in Point Comfort, Texas ("the Plant" or "the Facility").

1

2.      Waterkeepers seek injunctive and declaratory relief under the Clean Water Act, 33 U.S.C §§ 1365(a) and (d), and 28 U.S.C §§ 2201, 2202 (declaratory judgment), to prevent further illegal discharges and the resulting harm to Cox Creek, Lavaca Bay, Matagorda Bay, and the surrounding wetlands, beaches and their wildlife, as well as the harm to Waterkeepers. Waterkeepers also seek an order requiring Formosa to remediate and mitigate the harm caused by the illegally discharged plastics.

3.      Formosa's TPDES permit specifically prohibits the discharge of floating solids, including plastics, into Lavaca Bay and Cox Creek.

4.      On January 31, 2016, Waterkeepers began collecting samples of Formosa's illegally discharged plastics.  Since that time through January 4, 2019 and ongoing, Waterkeepers have gathered more than 2,328 samples over 20 miles of shoreline in Lavaca Bay and Matagorda Bay, as well as along Cox Creek and surrounding wetlands and beaches.  The plastics have been found from Six Mile to Indianola and Port O'Connor.  The following aerial photo correctly depicts the location of the Formosa plant and relevant significant landmarks near the plant.



5.      Starting in April 2018, Port Lavaca Bay resident Myron Spree began taking samples of

discharged plastics at Formosa's outfall 001 in Lavaca Bay.  Mr. Spree continues to take samples

of plastics discharged at outfall 001 into Lavaca Bay.

3

6.      Cox Creek, Lavaca Bay, and Matagorda Bay are areas of sport and commercial fishing and also are habitat for turtles, birds, fish, shrimp and other marine and wetland wildlife. Endangered whooping cranes winter at Powderhorn Ranch State Park and Aransas National Wildlife Refuge, which border Matagorda Bay just south of Formosa.  Endangered turtles regularly swim in Lavaca Bay.

7.      Penalties in this case can total at least $213,936 or more per day, because violations of the Clean Water Act are enforced at each of Formosa's different discharge outfalls.  Each day Formosa has illegally discharged plastics into Lavaca Bay and Cox Creek, it has violated the law at least four times:  for any illegal discharge into Lavaca Bay, for any illegal discharge into Cox Creek, and for the failure to report any discharge to TCEQ for each outfall.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; 30 TAC § 307.4(b)(2 – 4); 30 TAC § 305.125(9). Penalties are paid to the federal government.  Penalties could exceed $213,936, if there are illegal discharges from more than two outfalls in any day.

8.      In determining appropriate penalties, the Clean Water Act requires the Court to consider the seriousness of violations, Formosa's economic benefit from the violation, Formosa's history of repeated violations of laws, whether Formosa's recent efforts to comply with the law are in good-faith, and the economic impact of the penalty on a company like Formosa Corp., USA, which had 2017 gross operating revenue of $4.4 billion and a 2017 net after-tax income of $900 million, and other matters as justice may require. 42 U.S.C. § 1319(d).  (The financial data are from the Formosa Plastics Corp. website in Taiwan, http://www.fpc.com.tw/fpcwuploads/files/2017%20Financial%20Statement-Consolidated-EN.pdf, internal page 35.)

9.      Formosa's ongoing violations of the Clean Water Act have caused, and unless abated, will continue to cause significant harm to the Cox Creek, Lavaca Bay, and Matagorda Bay ecosystems that Waterkeepers use and enjoy.

## JURISDICTION AND VENUE

10.     Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Waterkeepers and Formosa Plastics. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. §§ 1319(d), 1365(a), (d).

11.     Pursuant to Section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), Waterkeepers notified Formosa and its registered agent of its violations of the Act and of Waterkeepers' intent to sue under the Act by letter dated and postmarked April 6, 2017.  A copy of the Notice of Intent was attached to the Original Complaint as **Exhibit 1** and is incorporated herein by reference.  Waterkeepers also notified the Administrator of the United States EPA, the Regional Administrator of EPA, and the Executive Director of the TCEQ.  More than 60 days have passed since Waterkeepers sent the notice.

12.     Formosa's violations are continuing because there is a strong likelihood, based on past conduct, that Formosa will continue to discharge plastics in violation of its permit and the Clean Water Act.

13.     Until significant and permanent changes to the facility and its operations are made, Formosa will continue to illegally discharge plastics continuously and/or intermittently.

14.     Formosa's violations continue daily under the "continuing violations" doctrine, because Formosa has failed to remedy or clean up the discharged plastics, which have "persistent effects that are amenable to correction."

15.     Formosa's plastics remain in and around Cox Creek, Lavaca Bay, and Matagorda Bay, and have been there since at least January 31, 2016.

16.     Venue lies in the Southern District of Texas, pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this claim occurred at the Formosa facility, located in Point Comfort, Texas, in Calhoun County, within the Southern District of Texas.

### PARTIES

17.     Plaintiff SAN ANTONIO BAY ESTUARINE WATERKEEPER is an unincorporated association that was started in 2012 as a project of the Calhoun County Research Watch. Calhoun County Research Watch is a 501(c)(3) non-profit organization founded in 1989. Waterkeeper is part of a national network of Waterkeeper organizations, the Waterkeeper Alliance.  The board of Waterkeeper meets as needed, and its executive director is Plaintiff S. Diane Wilson. Each Waterkeeper Alliance member has a designated Waterkeeper.  Bob Lindsey is that person for the San Antonio Bay Estuarine Waterkeeper.

18.     The mission of Waterkeeper is to monitor and pro-actively protect Lavaca, Matagorda and San Antonio Bays and to educate the public, while reporting relevant findings to the appropriate authorities.  Waterkeeper is committed to engaging volunteers, marine biologists, environmental advocates from both Calhoun County Resource Watch and Texas Injured Workers, commercial fishermen, and other members of the community to identify violations of the CWA and promote cleanup and recovery efforts.  Waterkeeper also promotes the

6

preservation of local wetlands and waterways for proper commercial and sport fishing and other recreational uses, such as swimming and other watersports to further the appreciation of these beautiful natural resources.

19.     Waterkeeper believes it is important that the public be aware of threats to the Bays. Waterkeeper engages media sources to publicize areas of concern, such as the harmful pollution of waterways by chemical plants and others.  Waterkeeper hosts public meetings to educate the community, comments on permit applications at environmental agencies, notifies government agencies when there are problems in the waterways, and files lawsuits when other alternatives are unavailing.

20.     Members of Waterkeeper have seen Formosa's plastics on the shores of Cox Creek, Lavaca Bay and Matagorda Bay and have reported the plastics to TCEQ and EPA.

21.     In July 2013, Waterkeeper requested an administrative contested case hearing on Formosa Plastic's application for a renewal and amendment to its TPDES permit.  In that request, Waterkeeper described the ongoing, extensive littering of the area with plastics and asked TCEQ to prohibit such discharges.

22.     Members of Waterkeeper include sport and commercial fishermen.  They are concerned about the effects of plastics on fish, birds, and marine wildlife.  Waterkeeper is well aware of the fragile balance of life in Lavaca Bay and that harm to aquatic species can harm not just those species and the ecosystem but, also, the livelihoods of commercial fishermen, shrimpers, oystermen and the passions of those people and of recreational fishers.

23.     Members of Waterkeeper walk the beaches of Lavaca Bay and swim and boat in its waters.  They are offended by the littering of the Bay and its shores with plastics.  They are

7

concerned about the aesthetic damage to and environmental health of the beaches, wetlands, shores and bays and the wildlife that depend on those resources.

24.     Waterkeeper is distressed that, after years of complaints to state and federal agencies, Formosa has not taken adequate steps to prevent the illegal discharge of plastics.

25.     Waterkeeper's members' use and enjoyment of the areas near and downstream of Formosa's discharges have been, are being, and will continue to be diminished because of Formosa's Clean Water Act violations. Unless the requested relief is granted, Formosa's Clean Water Act violations will continue to injure Waterkeeper.

26.     Plaintiff S. DIANE WILSON has spent much of her life working in the local bays surrounding Calhoun County; these include Lavaca/Matagorda Bays and San Antonio Bays.  Ms. Wilson is the fourth generation in her family to fish the bounties of these bays. For forty years, she worked as a commercial fisherman, shrimper, oysterman, and fin fisher, and as a manager at a fish house.  She has retired from those professions but continues in the shrimping industry, as a net builder and mender.  She has also worked to protect the bays from pollution and degradation. The bays not only support her financially but, also, they are precious to her.

27.     From time to time, Ms. Wilson goes out on a skiff into Lavaca and Matagorda Bays.  She swims with her children and grandchildren in Matagorda Bay at Magnolia Beach.

28.     Ms. Wilson has participated formally at EPA and TCEQ to ask the agencies to require that any industrial discharges into the Lavaca Bay system are as protective of the bays as possible.  She has asked that permits contain the most stringent measures and the lowest levels of toxins.  She has filed comments on permits and complained formally to government agencies when industries have not complied with permit terms.  She has been involved in litigation against

8

those who pollute the bays.

29.     Since at least 2009, Ms. Wilson has complained to EPA and TCEQ about Formosa's

illegal discharge of plastics into Lavaca Bay.  Since that time, she has been notified that the

agencies have informed Formosa that the discharge of pellets violates the Clean Water Act.  And

she has seen new and continuous discharged plastics, even after investigations and findings of

violations by EPA and TCEQ.

30.     Ms. Wilson has often seen Formosa's plastics while on the shores of Lavaca Bay.  She

has seen them on the shore of Cox Creek, near the Interstate causeway, at 6-mile (in the

northwest corner of Lavaca Bay), Black Rock, Magnolia Public Beach, and Port Lavaca boat

launch, among other places.  She has helped collect samples of the plastic pellets and plastic

powders from around Lavaca and Matagorda Bays, and Cox Creek.

31.     Ms. Wilson cares deeply about the aesthetic beauty and the environmental health of the

bay, wetlands, and shores, and the wildlife dependent on those resources. She detests the littering

of Texas beaches and wetlands and is saddened when she sees the plastics and knows that they

can cause even more harm to aquatic species.  Ms. Wilson knows firsthand about the delicate

balance of the ocean's ecosystem.  During her lifetime, she has witnessed the decrease in shrimp,

oysters and other species in the bays.  She understands that harm to one species can cause harm

to other species.  She has worked with oystermen to help revive oyster reefs in the bay. She

worries that fish, oysters, shrimp, turtles, shore birds and other aquatic species in the bay will be

harmed by ingesting the plastic pellets and other plastic powders.  That worry is enhanced,

because the toxins can adhere to plastic pellets, meaning that species in the bay could be

ingesting additional toxins when they ingest Formosa's plastic pellets.  The possibility of toxins

adhering to Formosa's plastic pellets is even more daunting to Ms. Wilson because of residual mercury in the middle of Lavaca Bay from a former Alcoa superfund site.

32.     Ms. Wilson's financial livelihood could be negatively affected by the plastics in the bay and shores.  If fewer shrimp populate the bay, due to ingestion of toxic plastic pellets, fewer shrimpers will need work on their nets from her.  Less shrimping in the bay would harm her financially.  Further, if consumers are concerned about eating fish and shrimp from a bay littered with plastic pellets and other plastic powders, Ms. Wilson's income could be harmed.

33.     Based on these concerns, Ms. Wilson's use and enjoyment of the areas near and downstream of the Plant's discharges have been, are being, and will continue to be diminished because of Formosa's Clean Water Act violations. Unless the requested relief is granted, Formosa's Clean Water Act violations will continue to injure Plaintiff.

34.     FORMOSA PLASTICS CORP., TEXAS, is the owner and an operator of the Plant, which has operated since 1983 and is permitted to discharge effluent pursuant to TPDES permit No. WQ0002436000.   FORMOSA PLASTICS CORP., TEXAS, is a wholly owned subsidiary of FORMOSA PLASTICS CORP., U.S.A.  FORMOSA PLASTICS CORP., U.S.A, is an operator of the Plant.  Formosa Plastics Corp., U.S.A., is a privately-held corporation affiliated with Formosa Plastics Group of Taiwan, a group founded in 1954 with annual revenues of more than $70 billion. (http://www.fpcusa.com/about.html , Jan. 21, 2019)  Formosa Plastics Corp., U.S.A., is one of Formosa Group's most profitable entities.  In 2016, Formosa Plastics Corporation, U.S.A. posted more than $1.36 billion in net income.

35.     FORMOSA PLASTICS CORP., TEXAS, and FORMOSA PLASTICS CORP., U.S.A. all have the same registered agent in Texas – Corporation Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701-3218.  Formosa Plastics Corp., Texas, and Formosa Plastics Corp., U.S.A. have been served with process and have answered.

## FEDERAL STATUTORY BACKGROUND

36.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 32 U.S.C. § 1251.  The national goal of the act was to eliminate the discharge of pollutants into navigable water by 1985, and the interim goal was to insure that there is "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water."  *Id.*

37.     The Clean Water Act prohibits the point source discharge of pollutants to waters of the United States, unless the discharge is in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to the Act. 33 U.S.C. § 1342(a).

38.     The NPDES permitting scheme is the primary mechanism for regulating discharges of pollutants. NPDES permits must include conditions that will ensure compliance with the Clean Water Act.  The CWA allows federal permitting and enforcement of the CWA to be delegated to state agencies.  That power has been delegated to the State of Texas, where the TCEQ issues "TPDES" permits.

39.     Once regulated by a TPDES permit, a facility's discharges must strictly comply with all of the terms and conditions of that permit.

## CLEAN WATER ACT ENFORCEMENT PROVISIONS

11

40.     The Clean Water Act allows citizens to enforce a violation of an "effluent standard or limitation." 33 U.S.C. § 1365(a)(1).  An effluent standard or limitation includes a Clean Water Act TPDES permit or condition thereof.

41.     Citizens must provide notice of any alleged violations 60 days prior to commencing suit. After 60 days have passed, citizens may bring an action in federal district court to enforce ongoing Clean Water Act violations.

42.     33 U.S.C. § 1319(g)(6)(B) bars the civil penalty remedy in citizen suits brought for permit violations that are also the target of diligent prosecution by the State under a State law comparable to the law laid out in 33 U.S.C. § 1319(g), unless the citizen suit is noticed before the State administrative action is commenced and is filed within 120 days of being noticed.

43.     This suit falls within the exception to the bar of §1319(g)(6)(B) and is not barred.

44.     The citizen suit provision of the Clean Water Act grants jurisdiction to United States District Courts to impose an injunction requiring compliance with the Act and to impose appropriate civil penalties of up to $53,484 per violation per day. 33 U.S.C. §§ 1365(a). Additionally, the District Court may award costs of litigation (including expert witness costs and reasonable attorneys' fees) to citizen plaintiffs. 33 U.S.C. §§ 1365(d).

## STATEMENT OF FACTS

### A. Background – Formosa's Plant and TPDES Permit

45.     Formosa's Plant has 16 production units that produce plastic products, including small pellets.  Formosa manufactures caustic soda, ethylene dichloride (EDC), vinyl chloride monomer (VCM), polyvinyl chloride (PVC) suspension resin, specialty polyvinyl chloride (SPVC)

dispersion, blending, and copolymer resins, ethylene, high density polyethylene (HDPE), liner low density polyethylene (LLDPE), polypropylene (PP), and ethylene glycol.

46.     Formosa's TPDES permit requires stormwater from specific parts of the Plant to be routed to a wastewater treatment plant it operates onsite and that also treats process wastewater. That treated storm and wastewater are discharged directly into Lavaca Bay through a pipe that extends westward from the Plant.  The point where the pipe discharges wastewater is called Outfall 001.

47.     Formosa refers to the parts of the Plant from which stormwater is sent to the water treatment plant as "inside battery limits."  "Inside battery limits" areas are curbed so that the stormwater is theoretically retained and sent to the water treatment plant.

48.     Formosa's TPDES permit allows it to discharge some stormwater without being treated at the water treatment plant.  Formosa describes this stormwater as "non-contact" or "non-process area" stormwater.   The "non-contact" stormwater comes from parts of its facility Formosa calls "outside battery limits."  The "outside battery limits" stormwater drains into trenches and is discharged directly into Cox Creek through permitted outfalls.

49.     Formosa's stormwater that is "outside battery limits" regularly comes into contact with plastics.

50.     Formosa's current practices for inspecting its outside battery limits stormwater and managing it before it is discharged into Cox Creek are inadequate to prevent discharges of plastics, particularly when there are rain events.  Additionally, Formosa's stormwater system infrastructure is inadequate to properly manage the stormwater.

51.     Formosa discharges its wastewater and "contact" or "process area" stormwater at permitted outfall 001, and "non-process area" stormwater at permitted outfalls 002, 003, 004, 005, 006, 007, 008, 009, 010, 011, 012, 013.

52.     Some plastics produced by Formosa are solids that float on the surface of the water, while others are suspended or sink in water.

53.     Formosa's TPDES permit prohibits the discharge of "floating solids or visible foam in other than trace amounts" from all permitted outfalls.

54.     Formosa's TPDES permit requires stormwater that is discharged through outfalls 006, 007, 008, 010, and 011 to contain "no visible floating solids, foam or oil."

55.     TCEQ rules prohibit the discharge of "floating debris and suspended solids" into surface waters. 30 Texas Admin. Code 307.4(b)(2). This rule is incorporated by reference into Formosa's TPDES permit.

56.     The Executive Director of TCEQ has concluded that any discharge of floating solids violates Formosa's permit:  "[RESPONSE 2] The draft permit prohibits Formosa from discharging any kind of floating solids. The Executive Director has determined that it is not necessary to specify that polyethylene pellets are a solid, or to specify that if Formosa discharges polyethylene pellets it would be a violation of 30 TAC § 307.4(b)(2 – 4)."[1]

---

[1]  TCEQ Executive Director's Response to Public Comment, TPDES Permit No. WQ00024360000, Formosa Utility Venture, Ltd. and Formosa Plastics Corp., TX, at 8–9 (August 17, 2015).

57.     Formosa's TPDES permit and Texas law require Formosa to report discharges that may endanger human health or safety or the environment.  30 Tex. Admin. Code § 305.125(9).  This includes the discharge of plastics.

58.     The Executive Director of TCEQ has stated: "[RESPONSE 3] Formosa must notify the TCEQ within 24 hours of any noncompliance, including the discharge of polyethylene pellets."[2]

59.     In 2015, Formosa had the opportunity to review the TCEQ Executive Director's 2015 conclusions above (RESPONSES 2 & 3) regarding the terms of its TPDES permit, including the permit's requirements of no discharge of floating solids and reporting any discharges to TCEQ within 24 hours.  In its Response to Requests for Hearing on its TPDES Permit filed with the TCEQ Chief Clerk, Formosa agreed: "[i]n the event some polyethelyne pellets and PVC dust becomes entrained in stormwater runoff and is discharged into Lavaca Bay via one of the outfalls, then this would indisputably be a permit violation which must be reported to TCEQ within 24 hours."

60.     Formosa has not reported to TCEQ a discharge of plastics from its facility over the last 5 years.

**B. Formosa's Plastics Discharges in Violation of the Clean Water Act**

61.     Since 2004, Formosa has known or should have known of systemic problems with containing plastic pellets and floating plastic powders at its Plant.  In 2004, EPA documented problems with Formosa's settling pond spilling plastic pellets.

---

[2]  TCEQ Executive Director's Response to Public Comment, TPDES Permit No. WQ00024360000, Formosa Utility Venture, Ltd. and Formosa Plastics Corp., TX, at 9 (August 17, 2015).

62.     Since at least 2009, Plaintiff Wilson has complained to EPA and TCEQ about Formosa's illegal discharge of plastics.

63.     Lisa Vitale is a water quality specialist who, since 1999, has worked at various companies including Freese & Nichols that have been hired by Formosa USA to do quarterly biological and chemical monitoring at and around Formosa Texas' wastewater outfall 001 in Lavaca Bay.  As part of this work, Ms. Vitale has reported to Formosa that pellets were being discharged by its diffuser at outfall 001 and provided samples of water containing pellets to Formosa Texas before and after 2010, including in November 2018.

64.     In July 2010, Lisa Vitale recorded in her notes for the 001 Lavaca Bay water monitoring report for Formosa, "White 'pellets' coming out of [Formosa's 001] diffuser.  Same as previous encounters.  Will let Formosa know."

65.     Lisa Vitale has seen pellets at outfall 001 on at least half of her monitoring visits to outfall 001 and other monitoring locations in Lavaca Bay and has informed Formosa of the pellets at the 001 outfall each time she has seen them.

66.     Lisa Vitale has taken five or six samples at outfall 001 of water containing pellets and given those samples to John Hyak at Formosa Texas.

67.     In the past few years, Lisa Vitale has seen and reported to Formosa Texas more pellets than she had seen in previous years.

68.     In 2010, an EPA surprise inspection team observed that Formosa had illegally discharged plastic pellets.  EPA documented pellets immediately downstream of Formosa's permitted outfalls and on the shores of Lavaca Bay near Highway 35.  EPA specifically documented plastic

16

pellets illegally discharged outside of Formosa's outfalls 006, 007, 008 and 009, which discharge into Cox Creek.

69.     In its 2010 report, which Formosa received, EPA reported four concerns about Formosa's operation of the Plant.  One concern determined by EPA was "discharges of pellets and possible plastics from the storm drainage outfalls of the facility."  EPA reported "discharge of plastic pellets" and "poor housekeeping" as "indicators of solid waste concerns."

70.     In 2010, Plaintiff Wilson notified EPA that a local resident attending a barbecue near Formosa had found pellets up to his wrist eight feet from the shore of Lavaca Bay.

71.     Around 2010, a Formosa employee recognized the problems of pellets draining from loading areas.  That employee recommended changes to a supervisor to control pellets, but his recommendations were ignored.

72.     In 2013, 151 "nurdle nerds" petitioned TCEQ about the problems with Formosa's discharges, explaining, "On any given day, a visit to the boat launching area at Cox Creek (just east of Formosa) or adjacent shores will unearth PVC pellets."  A "nurdle" is another word for plastic pellets.

73.     In 2013, Plaintiff Wilson notified TCEQ and Formosa, during comments to the agency on Formosa's TPDES permit application, about plastic pellets being discharged by Formosa.

74.     In August 2013, the Union of Commercial Oystermen and several individual shrimpers and oystermen complained to TCEQ, during the TPDES permit proceeding, of Formosa's ongoing discharge of plastic pellets, stating, "Polyethylene pellets have been found in Lavaca Bay, coming from the Formosa facility."

75.     Formosa received the 2013 comments regarding pellets on its permit application at TCEQ and did not dispute that pellets have been discharged by Formosa and found in Lavaca Bay.

76.     In 2016, Plaintiff Wilson again notified TCEQ Region 14 (in Corpus Christi) of illegal discharges of plastics into Cox Creek and Lavaca Bay.

77.     In response to the 2016 complaints of Plaintiff Wilson, TCEQ undertook investigations in March and September 2016.  As a result of each investigation, TCEQ determined that Formosa had violated its TPDES permit by discharging plastic pellets into nearby waterways and onto the shore.[3]  In the 2016 investigations, TCEQ photographed Formosa's illegally discharged pellets in the water and sediment.  Formosa did not dispute that the pellets came from its Plant.

78.     TCEQ located Formosa's plastic pellets both in the water and on the shore.  The "Site Evaluation Map" prepared by TCEQ in conjunction with its September 2016 investigation shows the shore locations at which TCEQ found pellets (yellow arrows).  That map is set out immediately, following.

---

[3]  TCEQ Investigation of Formosa Plastics, Investigation #1313144, May 13, 2016, and TCEQ Investigation of Formosa Plastics, Investigation #1358247, October 24, 2016.



nd 6/9/13/2016 for discharged pellets

79.     In its May 2016 investigation report of the March 2016 inspection, TCEQ noted that

Formosa was already aware of the issue of discharging of plastic pellets through its outfalls.

80.     On May 1, 2017, TCEQ sent a Notice of Enforcement (NOE) to Formosa as a result of a

April 4, 2017 record (document) review by TCEQ. The purpose of the April 4, 2017 record

review was "to evaluate the status of the outstanding alleged violations associated with

compliance investigations… conducted on March 10 and 14, 2016 and September 07, 08, and 13,

2016." The record review noted that documentation submitted by Formosa about its corrective

actions "does not appear to resolve the outstanding violations." After referring the matter to

19

formal enforcement as a result of the NOE, TCEQ negotiated an Agreed Order with Formosa to resolve the violations.

81.      On January 16, 2019, the TCEQ Commissioners voted to approve the Agreed Order, which fined Formosa Plastics Texas $112,500 for six violation events involving plastic pellets from outfalls 006, 008 and 009, plus an additional $9,375 for failure to properly analyze effluent samples.[4] The Order states that during a record review conducted on April 4, 2017, a TCEQ investigator documented that "Plastic pellets were discharged from Outfall Nos. 006, 008, and 009 and were observed floating in Cox Creek and embedded in the creek's sediment." In the Order, TCEQ required Formosa to undertake semi-annual cleanups of plastic pellets.  In the Order, Formosa agreed that "Plastic pellets were discharged from Outfall Nos. 006, 008, and 009 and were observed floating in Cox Creek and embedded in the creek's sediment," and that such facts are evidence of failure "to prevent the discharge of solids in other than trace amounts into or adjacent to any water in the state."

82.      TCEQ undertook additional investigations of plastics discharges from Formosa's Plant in April and June 2018.  As a result of these investigations, TCEQ issued an Investigation Report on October 19, 2018 with Notices of Violation finding that Formosa violated its TPDES permit by discharging floating white debris from Outfall 001 into Lavaca Bay and plastic pellets from Outfalls 006, 008, and 009 into Cox Creek.[5]  In this Investigation Report, TCEQ included photographic documentation of Formosa's illegally discharges. The Agreed Order issued in January 2019 did not cover these 2018 notices of violations.

---

[4] TCEQ Enforcement Matter, Agreed Order, Docket No. 2017-0737-IWD-E.  The Agreed Order was signed by TCEQ Commissioners on January 17, 2019.
[5]  TCEQ Investigation Report for Regulated Entity Formosa Plastics Corporation, Texas, Investigation #1484116, October 19, 2018.

20

83.     No agency has required Formosa to effectively manage or treat all stormwater or wastewater to ensure that plastics are removed from the water prior to discharge.

84.     Starting on January 31, 2016, members of Waterkeeper began collecting evidence of Formosa's illegally discharged plastics.

85.     Waterkeeper members have found plastics littering over 20 miles of shoreline, beaches and wetlands around Matagorda Bay, Lavaca Bay and Cox Creek.

86.     From January 31, 2016 through January 4, 2019 and ongoing, members of Waterkeeper have collected over 2,322 pellet samples on 604  distinct days as well as thousands of photos and videos.  The samples, photos, and videos are from Lavaca Bay, Matagorda Bay and Cox Creek and have been found at and downstream or downwind of outfalls 001, 002, 004, 005, 006, 007, 008, 009, and 012.

87.     The following chart records the sampling done by Waterkeeper through January 4, 2019:

| Month | # Samples of Plastics | # Days Sampled |
|---|---|---|
| January 2016 | 4 | 1 |
| February 2016 | 12 | 9 |
| March 2016 | 3 | 3 |
| April 2016 | 8 | 4 |
| May 2016 | 58 | 18 |
| June 2016 | 61 | 15 |
| July 2016 | 68 | 19 |
| August 2016 | 97 | 23 |
| September 2016 | 95 | 24 |
| October 2016 | 99 | 24 |
| November 2016 | 91 | 24 |
| December 2016 | 140 | 29 |
| January 2017 | 144 | 30 |
| February 2017 | 108 | 22 |
| March 2017 | 106 | 28 |
| April 2017 | 108 | 20 |
| May 2017 | 168 | 30 |

| | | |
|---|---:|---:|
| June 2017 | 157 | 30 |
| July 2017 | 157 | 29 |
| August 2017 | 97 | 22 |
| September 2017 | 27 | 12 |
| October 2017 | 6 | 4 |
| November 2017 | 10 | 5 |
| January 2018 | 21 | 9 |
| February 2018 | 46 | 14 |
| March 2018 | 69 | 20 |
| April 2018 | 49 | 17 |
| May 2018 | 46 | 15 |
| June 2018 | 39 | 19 |
| July 2018 | 62 | 22 |
| August 2018 | 26 | 11 |
| September 2018 | 23 | 9 |
| October 2018 | 32 | 12 |
| November 2018 | 34 | 13 |
| December 2018 | 38 | 14 |
| January 2019 | 13 | 4 |
| **Total** | **2322** | **604** |

## C. Seriousness of Formosa's Discharges

88.     The plastics are persistent and do not degrade in water or on soil within a year.

89.     The plastics may not degrade in water or on soil for hundreds to thousands of years.

90.     Fish, turtles, shore birds and other marine species are known to eat plastic pellets.

91.     Local fishermen have caught fish from Cox Creek with plastic pellets in their guts.

92.     Formosa's plastics that are not trapped on shores, or cleaned up, could circulate into the

Gulf of Mexico.

93.     Formosa's plastics litter the beaches and shoreline around Lavaca Bay, Matagorda Bay

and Cox Creek.  The pellets are unattractive and degrade the natural environment.

94.     In 2016, independent contractors began trying to clean up the illegally discharged pellets for Formosa. In 2017, Horizon Environmental, a contractor working for Formosa to clean up discharged plastics, cleaned up 4,141 55-gallon bags of pellets and debris from Lavaca Bay, and in 2018, 2,335 bags of pellets and debris. In 2017, Horizon Environmental cleaned up 29,659 55-gallon bags of pellets and debris near Formosa's outfalls on Cox Creek, and in 2018, 34,656 55-gallon bags of pellets and debris from Cox Creek.  In 2017, Horizon cleaned up from 72 to 716 tons of discharged pellets, and in 2018, Horizon cleaned up 78 to 783 tons of discharged pellets.

95.     Even after Horizon has cleaned up pellets from a location on Lavaca Bay or Cox Creek, Horizon will return to the site later in time for yet another cleanup of discharged pellets.

96.     Waterkeeper members have seen and documented plastics discharged by Formosa in or along the shores of Cox Creek, Lavaca Bay and Matagorda Bay after Formosa's contractor has performed clean-up operations at the different sites.

**D. Formosa's Past Non-Compliance with Regulatory Requirements**

97.     Formosa has a long history of contaminating Cox Creek, as well as groundwater and soils at the Plant in violation of environmental law.

98.     In 2006, EPA began an environmental investigation of Formosa and found violations of the Clean Air Act, the Resource Conservation and Recovery Act, the Clean Water Act, and the Emergency Planning and Community Right-to-Know Act. EPA and Formosa entered into a consent decree in 2010, which required Formosa to undertake compliance actions valued at $13,352,000 and required Formosa to pay a fine of $2.8 million.  *U.S. v. Formosa Plastics Corp.,* No. 6:09-CV-00061 (S.D. Tex.).

99.     In 2013, after failing to comply with all terms of the 2010 consent decree in case No. 6:09-CV-00061, Formosa agreed to pay the United States an additional $1,475,000 in penalties.

100.     In 2012, Formosa signed an agreement with EPA regarding hazardous vinyl chloride and 1, 2-dichloroethane that it had discharged into the groundwater at its Plant.  Formosa had not reported the discharge to EPA.  The hazardous wastes could not be removed from the aquifer. Formosa was required under federal hazardous waste laws to contain the contaminated water, at an estimated cost of $20,000,000. This clean up has been managed by EPA pursuant to the Resource Conservation Recovery Act (RCRA).  In 2016, contaminants of concern were still at high levels in the groundwater at Formosa.

101.     Formosa has also contaminated the groundwater adjacent to its facility, under property owned by the Texas Department of Transportation (TxDOT).

102.     Formosa has spilled a number of hazardous contaminants across its Plant, in addition to those addressed in the 2010 and 2012 settlements of environmental cases.

103.     In 2016, new areas of groundwater contaminated by hazardous chemicals by Formosa were identified.  The newly identified groundwater contamination contains hazardous contaminants at concentrations above TCEQ's protective levels of concern.  The 2016 report documented contamination from spills of hazardous pyrolization gasoline and naptha at the Formosa olefins OSBL (outside battery limits) tank farm.  These spills contaminated both the soil and groundwater.

104.     In July 2011, Formosa was assessed penalties of $68,600 by TCEQ as part of an Agreed Order to resolve violations of the Clean Water Act at the Plant.

24

105.    Until March 2013, it was a "common practice" for the wastewater treatment unit at Formosa to violate its TPDES permit by averaging "abnormally" high compliance samples with other samples to arrive at mean values, which mean values it, then, reported to TCEQ. Formosa's pre-2013 "common practice" of sending "abnormally" high value water samples to an outside lab and, then, averaging the results violated TCEQ regulations and reflected, at best, Formosa's belief that its routine sampling results were unreliable.

106.    Formosa has agreed to pay penalties assessed by TCEQ as part of multiple Agreed Orders to resolve violations of the Clean Air Act at the Plant in 2010, 2012, 2014, 2015, and 2017.

107.    In May 2017, Formosa was assessed penalties of $209,251 by TCEQ as part of an Agreed Order to resolve industrial and hazardous waste violations at the Plant.

108.    In 2010, after an on-site inspection, the Occupational Safety and Health Administration concluded that Formosa had violated worker safety laws and, as a result, that workers were illegally exposed to PVC, SPVC, and other plastic powders at the facility.

**E. Protection for Witnesses May be Necessary**

109.    On many occasions, while Waterkeepers have been legally gathering Formosa's plastics in public waters and on public shores, representatives of the Calhoun County sheriff's office have monitored Waterkeepers' activities.  According to the sheriff's office, the deputies have responded to phone calls from Formosa regarding the sampling.  No illegal activity has ever been alleged.

110.    Formosa employs 1,910 employees and 795 contractors at its Point Comfort Facility. Calhoun County has approximately 22,000 residents.  16.8% of the residents in Calhoun County live in poverty.

111.    Formosa has a history of retaliation against workers who complain about workplace

safety and environmental compliance.

112.    Potential witnesses in this lawsuit have already expressed fear that Formosa will retaliate

against their relatives or friends who work at the Plant if these witnesses provide testimony.

### FIRST CLAIM FOR RELIEF

**Violations of Provision Prohibiting Discharge of Solids**

**(Violations of 33 U.S.C. Sections 1311(a), 1342)**

113.    Plaintiff incorporates and re-alleges all preceding paragraphs.

114.    Formosa's exceedances of the effluent limitations set within its TPDES Permit constitute

violations of Formosa's TPDES Permit, as well as 30 Texas Admin. Code 307.4(b)(2-4),

sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342, and regulations

implementing the Clean Water Act at 40 C.F.R. § 122.41(a).

115.    These violations include, but are not limited to, violations of Formosa's TPDES Permit's

requirements of "no discharge of floating solids or visible foam in other than trace amounts"

from any outfalls, "no visible floating solids, foam or oil" from outfalls 006, 007, 008, 010, and

011, and no discharge of "floating debris and suspended solids" into surface waters.

116.    As defined by the Clean Water Act, Formosa is a "person" responsible for discharging

"pollutants" from a "point source" into the "waters of the United States" in violation of the

"effluent limitations" contained in the applicable TPDES Permit. 33 U.S.C. § 1362.

117.    Each day of violation constitutes a separate and distinct violation under the Clean Water

Act. More than one violation per day can be assessed for violations at different outfalls on the

same day.

118.    Formosa's violations have been occurring since at least January 2016 to the present, and are ongoing. Given Formosa's past practices and history of non-compliance with environmental laws, these violations are reasonably likely to recur, absent redress from this Court.

119.    Formosa has failed to remedy its violations of the Clean Water Act and, therefore, remains in violation of the law.

120.    Because TCEQ has fined Formosa for six violations events of the Clean Water Act, during the same time period as illegal discharges are alleged in Plaintiffs' complaint, any total calculation of violations should be reduced by six.

## SECOND CLAIM FOR RELIEF

### Violations of Monitoring and Reporting Requirements

### (Violations of 33 U.S.C. Sections 1311(a), 1342)

121.    Plaintiffs incorporate and re-alleges all preceding paragraphs

122.    Formosa has failed to report discharges of plastics to TCEQ.

123.    Formosa's failure to report discharges of pellets violates Formosa's TPDES Permit, 30 Tex. Admin. Code § 305.125(9), sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and regulations implementing the Clean Water Act at 40 C.F.R. § 122.41(a).

124.    Each day of violation constitutes a separate and distinct violation under the Clean Water Act.  A report to TCEQ is required for each day that Formosa discharges pellets and for each outfall for which there is an illegal discharge.

125.    These violations, also, have been occurring since at least January 2016 to the present, and are ongoing. There is a reasonable likelihood they will recur, absent redress from this Court.

## RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

A.      Declare that Formosa has violated and is in ongoing violation of its TPDES Permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R. § 122.41(a), since at least January 31, 2016;

B.      Issue an injunction ordering Formosa to stop discharging plastics into Cox Creek and Lavaca Bay in violation of its TPDES permit and the Clean Water Act, and, specifically, require Formosa to adopt procedures reasonably calculated to prevent future discharge of plastics and to undertake for a period of five years following judgment monitoring calculated to demonstrate that discharges of plastics have ceased.

C.      Order Formosa to take specific actions to remediate and/or mitigate the environmental harm caused by its violations.

D.      Enter a money judgment imposing, pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. § 1319(d), and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Part 19, appropriate civil penalties against Formosa up to a maximum amount of  $53,484 per day per violation for all violations of the Clean Water Act;

E.      Retain jurisdiction over this matter until such time as Formosa has come into compliance with the requirements of the Clean Water Act and fully complied with any remedial orders of this Court;

F.      Issue an order awarding Plaintiffs their litigation expenses, including reasonable attorney fees, costs, and expert witness fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

G.      Award such other relief, as this Court deems appropriate.

DATED this 24th day of January 2019.

Respectfully submitted,


*s/Amy Johnson*
_____
Amy Johnson, attorney in charge
State Bar No. 10679550
Erin Gaines
State Bar No. 24093462
Enrique Valdivia
State Bar No. 20429100
TEXAS RIOGRANDE LEGAL AID
4920 N. I-35
Austin, TX 78751
512-374-2739 Telephone
512-447-3940 Fax
egaines@trla.org
*Attorneys for Plaintiff, S. Diane Wilson*

David Frederick
State Bar No. 07412300
FREDERICK, PERALES, ALLMON &
ROCKWELL, PC
1206 San Antonio
Austin, TX 78701
(512) 469-6000 Telephone
dof@lf-lawfirm.com
*Attorney for Plaintiffs, S. Diane Wilson and San
Antonio Bay Estuarine Waterkeeper*

David T. Bright
State Bar No. 02991490
SICO HOELSCHER HARRIS & BRAUGH, LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
(361) 653-3300 Telephone
(361) 653-3333 Fax
dbright@shhblaw.com
*Attorney for Plaintiffs, S. Diane Wilson and San
Antonio Bay Estuarine Waterkeeper*

29