# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SAN ANTONIO BAY ESTUARINE | ) | |
| WATERKEEPER and | ) | |
| S. DIANE WILSON, | ) | |
|     Plaintiffs | ) | CIVIL ACTION NO. 6:17-CV-47 |
| | ) | |
| VS. | ) | |
| | ) | |
| FORMOSA PLASTICS CORP., | ) | |
| TEXAS, and FORMOSA PLASTICS | ) | |
| CORP., U.S.A., | ) | |
|     Defendants | | |

**CONSENT DECREE**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 2 |
| II. | APPLICATION AND SCOPE | 2 |
| III. | DEFINITIONS | 2 |
| IV. | REMEDIAL MEASURES | 3 |
| | A. Engineering Changes | 3 |
| | B. Monitoring, Reporting, and Future Mitigation Payments | 8 |
| | C. Remediation of Past Discharges | 12 |
| | D. Permit and Mitigation Terms | 14 |
| | E. Environmental Mitigation Projects | 15 |
| V. | COSTS OF SUIT | 21 |
| VI. | DISPUTE RESOLUTION | 22 |
| VII. | MISCELLANEOUS | 23 |
| VIII. | CONTINUING JURISDICTION | 23 |
| IX. | MODIFICATION | 23 |
| X. | TERMINATION | 23 |
| XI. | NOTICES AND SERVICE OF PROCESS | 24 |
| XII. | SIGNATORIES | 25 |

1.  Plaintiffs San Antonio Bay Estuarine Waterkeeper and S. Diane Wilson (hereinafter "Waterkeeper" or "Plaintiffs"), brought this federal Clean Water Act lawsuit pursuant to 33 U.S.C. §1365(a)(1) against Formosa Plastics Corp., Texas, and Formosa Plastics, Corp., U.S.A., (hereinafter "Formosa") alleging the illegal discharge of Plastics from Formosa's Point Comfort, Texas, plastics facility. The lawsuit was filed July 31, 2017.

2.  The case was tried to the Court on issues of liability from March 25-28, 2019. The Court heard testimony from numerous experts and witnesses regarding the discharged Plastics. Hundreds of documents were admitted in evidence.

3.  On June 27, 2019, the Court issued a Memorandum and Order, ruling on liability and determining that a declaratory and injunctive judgment should issue pursuant to Waterkeeper's claims for relief in the form of appropriate sanctions for past violations and injunctive relief to enforce future compliance. The Court also awarded attorneys' fees.

4.  The Plaintiffs sought in their injunctive relief that the Court order a monitor to review changes at the facility that would stop the discharges; order that efforts to clean up the discharges continue and be protective of the environment; and that penalties continue to be paid until the discharges ceased.

5.  The Plaintiffs sought the maximum penalties available pursuant to 40 C.F.R. § 19.4.

6.  The remedy phase of this trial was scheduled for October 28, 2019.

**NOW THEREFORE**, in the interest of settling and resolving all civil claims and controversies regarding the violations described above; the Parties hereby consenting to the entry of this Consent Decree; and the Court hereby finding that settlement of the claims alleged without further litigation or trial of any additional issues is fair, reasonable and in the public interest and

1

the entry of this Consent Decree is the most appropriate way of resolving the claims alleged, IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

## I.    JURISDICTION AND VENUE

7.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Waterkeeper and Formosa. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. §§ 1319(d), 1365(a), (d).

8.    Venue lies in the Southern District of Texas, pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this claim occurred at the Formosa facility, located in Point Comfort, Texas, in Calhoun County, within the Southern District of Texas.

## II.    APPLICATION AND SCOPE

9.    The provisions of this Consent Decree shall apply to and be binding upon the Parties to this action, and their agents, employees, successors, and assigns, as well as to all persons acting under the direction and/or control of Formosa, including firms, corporations, and third parties, such as contractors engaged in implementation of this Consent Decree.

10. Formosa shall provide a copy of this Consent Decree to any consultant or contractor selected or retained to perform any activity required by this Consent Decree.

## III.    DEFINITIONS

11. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "**Best Available Technology**" means the best available technology economically achievable as provided in 33 U.S.C. § 1311(b)(2)(A).

b.    "**Boom**" means a boom, boom with a net, or boom with another device designed to capture Plastics in the environment.

c.    "**Bypass Pipe**" means a pipe four (4) to eight (8) inches in diameter designed to allow collection of samples of the wastewater.

2

d.   "**Dispute Resolution Process**" means the process described in Section VI. of this Consent Decree.

e.   "**Days**" means calendar days, including weekends and holidays. Computation of time begins the calendar day after receipt by one representative described in Section XI.

f.   "**Engineering Consultant**" means a qualified, external (non-Formosa) stormwater and wastewater engineer or engineering firm chosen through the process described in Section IV(A), paragraphs 12-15 of this Consent Decree, retained and paid for by Formosa.

g.   "**Force Majeure Event**" means any event that would otherwise be a violation of this agreement but was caused solely by an act of God, war, strike, riot, or other catastrophe. Formosa shall take all reasonable steps, consistent with industry standards, to prevent any discharges of Plastics resulting from a Force Majeure event.

h.   "**Formosa**" means Formosa Plastics Corp., Texas and Formosa Plastics Corp., U.S.A., unless expressly stated otherwise in this Consent Decree.

i.   "**Mitigation Projects**" means environmental remediation projects that provide benefits that would not otherwise be available but for this Consent Decree.

j.   "**Monitor**" means a qualified, external (non-Formosa) person or firm that is mutually agreed upon and chosen through the process set forth in Section IV(B), paragraph 28 of this Consent Decree, paid for by Formosa.

k.   "**Plastics**" means visible plastic pellets, flakes or powder produced at the Formosa Point Comfort Plant.

l.   "**Remediation Consultant**" means a qualified, external (non-Formosa) environmental remediation firm mutually agreed upon and chosen through the process set forth in Section IV(C), paragraphs 39-40, paid for by Formosa.

m.   "**Matagorda Bay Mitigation Trust**" or "**the Trust**" means the trust established to accept, manage and distribute Mitigation Project payments and other mitigation monies paid pursuant to this Consent Decree.

n.   "**Trustee**" means the trustee of the Matagorda Bay Mitigation Trust established by this Consent Decree that will manage the distribution of funds due to the Trust.

## IV.   REMEDIAL MEASURES

### A.   Engineering Changes

12. Within twenty-one (21) Days of the effective date of this Consent Decree, Formosa

will propose to Plaintiffs an Engineering Consultant to review the current design and operation of

3

the Formosa Point Comfort Plant with regard to the discharge of Plastics and, ultimately, to design and audit the effectiveness of measures to halt those discharges. The proposed Engineering Consultant shall not be Dr. Aiza Jose Sanchez or her firm.

13. Upon providing the proposal of an Engineering Consultant, Formosa will provide to Plaintiffs the proposed Engineering Consultant's resume and a list of past clients. Plaintiffs may ask questions of Formosa and the proposed Engineering Consultant and object to the selection of the proposed Engineering Consultant within fourteen (14) Days of the proposal by Formosa, if Plaintiffs believe the Engineering Consultant's qualifications are not adequate.

14. If the selection of an Engineering Consultant cannot be resolved between the Parties within seven (7) Days of the Plaintiffs' objection to the proposal by Formosa, then the determination of the Engineering Consultant will be made by the Court through a joint motion to the Court wherein Formosa and Plaintiffs each present the Court with proposed recommendation(s) and reasons for recommending their proposed Engineering Consultant(s).

15. Formosa will retain the Engineering Consultant within ten (10) Days of the written consent by the Plaintiffs to Formosa's proposed Engineering Consultant or within ten (10) Days of the Court's determination.

16. The Engineering Consultant shall have an opportunity to review all information requested and necessary to make a thorough evaluation of Formosa's wastewater and stormwater systems, including but not limited to all documents reviewed by, and the expert reports of, Dr. Aiza Jose Sanchez, as well as at least one site visit to the facility and off-site outfall locations on Cox Creek and Lavaca Bay, and any other information requested by the Engineering Consultant.

17. Plaintiffs' designated engineer or engineering firm ("Plaintiffs' Engineering Expert") will have the opportunity to go on the site visit with the Engineering Consultant.

18. Plaintiffs may accompany their Plaintiffs' Engineering Expert and the Engineering Consultant on a visit to Cox Creek and Lavaca Bay to describe what they have seen when collecting samples.

19. The Engineering Consultant shall, consistent with good engineering principles, produce plans to retrofit the facility with the Best Available Technology and design to prevent the discharge of Plastics, including the following plans to address deficiencies in Formosa's current system:

    a. capacity improvements to the stormwater drainage system such that flooding does not occur from rainfall that is, at least, a 5-year 24-hour rainfall event (6.8 inches in 24 hours);

        i. In support of this effort, Formosa agrees, if requested by the Engineering Consultant, to update the 2013 Ganem & Kelly drainage study for existing and ultimate conditions, including all sources of water into the stormwater system and other factors affecting flow and capacity, including detained water, gate openings/closings, current stormwater controls, screens, gabions, and Aquaguards. Ultimate conditions include the same considerations for existing, plus any foreseeable future changes including facility expansions, and additional stormwater controls that may modify conditions. The model should include all sources of water transported by the conveyance system in addition to rainwater, such as washwaters utilized at the facility. It should also model any storage or temporary detention of waters within the system. This means to model the stormwater system, including the amount of water normally in the system, and model any recommended changes to the system to determine how it would operate in different rain events.

    b. direction of all stormwater outside battery limits for Outfalls 002, 003, 004, 005, 006, 007, 008, 009, 012 and 014 to a holding pond system that is designed to have zero (0) discharge of stormwater into Cox Creek for at least a 5-year 24-hour rainfall event (6.8 inches in 24 hours). The ponds and stormwater ditches will include engineered controls to remove Plastics if stormwater will be discharged into Cox Creek in the event of a greater than 5-year 24-hour rainfall event (6.8 inches in 24 hours);

    c. improvements to the inside boundary limits stormwater and wastewater systems to remove Plastics prior to entry into the current combined wastewater treatment plant ("CWTP") system; and

d.    improvements in source reduction at all manufacturing and loading units.

20. Formosa's engagement of the Engineering Consultant shall require that the Engineering Consultant's plans to retrofit the facility to prevent future discharge of Plastics will be provided to Formosa within four (4) months of the hiring of the Engineering Consultant.

21. All plans the Engineering Consultant provides to Formosa will be shared simultaneously with Plaintiffs, along with any underlying documents that explain or justify the plans. Within forty-five (45) Days of receiving the plans from the Engineering Consultant, Formosa will determine which recommendations for each category of improvements (paragraphs 19(a)-(d)) Formosa intends to implement and will share that information with the Engineering Consultant and Plaintiffs. Formosa's plans must address all of the deficiencies and requirements in paragraphs 19(a)-(d).

22. Plaintiffs will have thirty (30) Days to contest the adequacy of Formosa's proposed implementation of the plans to comply with the requirements in paragraphs 19(a)-(d), request additional information, and/or request a conference with Formosa and the Engineering Consultant to raise any concerns. Plaintiffs' concerns will be specific and expressed in writing. If the concerns raised by the Plaintiffs cannot be resolved among the Parties in thirty (30) Days after receipt, then the issues will be addressed through the Dispute Resolution Process.

23. Within thirty (30) Days after the Parties agree on the Engineering Consultant's plans (the "Final Plan"), the Engineering Consultant will establish reasonable deadlines not later than three (3) years from the effective date of this Consent Decree for each of the elements in the Final Plan, including interim deadlines for different phases of each project. The implementation deadlines and interim deadlines proposed by the Engineering Consultant will be shared with

6

Plaintiffs, and the Plaintiffs will have twenty-one (21) Days from receipt to review the proposed deadlines and raise any concerns prior to finalization.

24. The deadlines, including interim deadlines, established by the Engineering Consultant and agreed to in writing by the Plaintiffs or resulting from the Dispute Resolution Process will be binding on Formosa, but Formosa may request, and the Engineering Consultant shall grant, reasonable extensions of any deadline due to delays not caused by Formosa, including by its subcontractors. Formosa shall notify Plaintiffs of any such requests and, if the Plaintiffs object to any requested extension, the Plaintiffs' objection shall be subject to the Dispute Resolution Process.

25. Formosa will provide Plaintiffs with quarterly updates regarding Formosa's progress in implementing the Engineering Consultant's Final Plan and report any deviations from the implementation deadlines. Formosa will provide Plaintiffs with any additional supporting documentation and/or a site visit, if requested, to assess the progress in implementing the Final Plan.

26. When any category of improvement is fully implemented, the efficacy of the improvement, including the efficacy during rain events, will be reviewed or tested for six (6) months ("First Efficacy Period") by the Engineering Consultant. If the testing shows additional changes or other improvements are needed, the Engineering Consultant will revise the Engineering Consultant's Final Plan and implementation schedule ("Revised Plan"), and the testing will again be conducted after the revisions are made ("Second Efficacy Period"). The Revised Plan will be provided to the Plaintiffs and Formosa, and any objection to the revisions by Plaintiffs or Formosa shall be provided in writing to the Engineering Consultant within twenty-one (21) Days. If an

agreement cannot be reached on the Revised Plan, the Revised Plan and implementation schedule are subject to the Dispute Resolution Process.

   a. The Engineering Consultant will produce a set of operating procedures for the new controls or improvements, which procedures establish monitoring protocols during the First Efficacy Period and, if needed, Second Efficacy Period. Such monitoring protocols will have monitoring logs that will be shared with Plaintiffs quarterly, or upon request. Formosa and Plaintiffs will have fourteen (14) Days from receipt to comment on the proposed operating procedures, which will be subject to the Dispute Resolution process. After the testing or failure of equipment, any necessary changes will be made by the Engineering Consultant to the operating procedures. Formosa and Plaintiffs will have fourteen (14) Days from receipt to comment on the Second Efficacy Period operating procedures proposed by the Engineering Consultant, which will be subject to the Dispute Resolution process.

27. Documentation and results of the review or testing of implemented improvements described in paragraph 26 will be provided to Plaintiffs each month, and Plaintiffs will have the right to raise any concerns with the Engineering Consultant, including requesting additional testing or a site visit.

**B. Monitoring, Reporting, and Future Mitigation Payments**

28. Within thirty (30) Days of the effective date of this Consent Decree, the Plaintiffs and Formosa will each propose two (2) recommendations for a Monitor. Within seven (7) Days of exchanging recommendations, the Parties will agree upon the selection of the Monitor. If the selection of a Monitor cannot be resolved between the Parties within seven (7) Days of the exchange of recommendations, then the determination of the Monitor will be made by the Court. Formosa will retain the Monitor, pursuant to a contract agreed to by Plaintiffs in advance, within ten (10) Days of Plaintiffs' written consent to Formosa's proposed Monitor and the retainer agreement, or the Court's decision.

29. Formosa will install an above-ground Bypass Pipe with a backflow prevention device and treated wastewater sampling mechanism ("WSM") on the Outfall 001 discharge line outside

of Formosa's fenceline for the Formosa Point Comfort facility. The WSM will allow continuous

monitoring of Outfall 001 wastewater for Plastics in Formosa's Outfall 001 wastewater stream

after the wastewater has been treated by Formosa's water quality controls but prior to the

wastewater being discharged into Lavaca Bay through Outfall 001. The WSM will be designed

with a filter mesh size small enough to capture Plastics and will be equipped with automatic sensors

for pressure, solids and flow.

    a.     Dr. Aiza Jose Sanchez, or her firm, will propose a design for the Bypass Pipe and WSM. Formosa will have fourteen (14) Days from receipt of Dr. Jose Sanchez's proposed Bypass Pipe and WSM designs to provide comments on the proposed design. Dr. Jose Sanchez will have fourteen (14) Days to make any necessary modifications to the Bypass Pipe and WSM designs after receiving Formosa's comments, or a longer amount of time, as reasonably needed by the equipment provider to manufacture the WSM.

    b.     Any disputes about the final design of the WSM will be resolved through the Dispute Resolution Process.

    c.     After the design is agreed to, Formosa will have ninety (90) Days to construct the Bypass Pipe. Dr. Jose Sanchez, or her firm, will review the construction and have ninety (90) Days to conduct tests on the Bypass Pipe to determine whether modifications are needed.

    d.     The Monitor will ensure that the WSM is maintained and cleaned appropriately.

30. The Monitor shall have access at any time to the data collected by the WSM designed

by Dr. Jose Sanchez and installed on the Bypass Pipe. The Monitor may also physically view and

sample the discharge water and any solids collected by the WSM. The Monitor shall visit the WSM

at least twice per week and within two (2) Days, conditions permitting, of any indication from the

WSM there are solids on the filter. The Monitor will record any Plastics present. Plaintiffs and

Formosa will have electronic access to the data collected, but will not have access to the WSM,

unless (a) access is needed to address an emergency, (b) Plaintiffs' expert needs access to address

design or operational issues, or (c) either party accompanies the Monitor after notice to both

parties..

31. The Monitor shall record relevant information from the WSM, including pressure readings and photographs of any Plastics detected.

32. At least twice per week, the Monitor will examine (a) the outfalls, containment Booms, water and adjacent shores fifty (50) feet downstream and upstream of containment Booms for all Formosa outfalls discharging into Cox Creek and (b) the Bypass Pipe WSM.

    a.    If Formosa or its subcontractors detect Plastics upstream of a Boom or the shore areas upstream of the Booms, Formosa or its subcontractor will take photographs of the Plastics detected and will report that information to the Monitor and Remediation Consultant within twenty-four (24) hours.

    b.    Booms shall not be modified or moved without prior notice to Plaintiffs and the Monitor. Plaintiffs and the Monitor will have ten (10) Days from receipt of notice to object to the modification of Booms and that objection may be appealed to the Court if the issue cannot be resolved between Plaintiffs and Formosa. For purposes of this subparagraph, the phrase "modified or moved" does not include routine maintenance and repair of the Booms.

    c.    Within thirty (30) Days of the effective date of this Consent Decree, Formosa shall install and/or maintain Booms for all outfalls discharging to Cox Creek, including Outfalls 003, 007, 010, and 012.

33. The particular days of the Monitor's visits will be determined exclusively by the Monitor and will not be known to Formosa or Plaintiffs in advance.

34. The Monitor shall report the location of any Plastics to the Remediation Consultant.

35. The Monitor will document the presence of any Plastics outside of Formosa's outfalls and at the locations in paragraph 32 through a log and photographs. Monitoring logs and any photographs or videos taken will be sent to Plaintiffs, Formosa and the Remediation Consultant weekly. These logs and photographs may be shared publicly.

36. If either Formosa or the Monitor documents any Plastics resulting from sampling at the WSM for Outfall 001 or upstream of containment Booms, including on the upstream shores or in the water, for outfalls discharging into Cox Creek, and including discharges of Plastics found by the Monitor in accordance with paragraph 37, Formosa, subject to any claim by Formosa of a Force

Majeure Event or Force Majeure Events, is in violation of its discharge permit and Formosa will,

within thirty (30) Days of learning of the violation, pay into the Mitigation Trust the amount below:

- For discharges in calendar year 2019: $10,000
- For discharges in calendar year 2020: $15,000
- For discharges in calendar year 2021: $20,000
- For discharges in calendar year 2022: $25,000
- For discharges in calendar year 2023: $30,000
- For discharges in calendar year 2024 and after: maximum amount provided by 40 C.F.R. § 19.4.

The stipulated mitigation payments shall be separate for Lavaca Bay and Cox Creek; so,

for example, on a given day, a payment could be $20,000 in 2019 if Plastics are identified by the

Monitor in accordance with this paragraph in both Cox Creek and Lavaca Bay on the same day.

37. Plaintiffs or other concerned citizens may send documentation of Plastics outside of

Formosa's outfalls in Cox Creek or on the shores of Cox Creek for outfalls discharging into Cox

Creek to the Monitor for review. If the Monitor determines the submitted documentation

demonstrates new discharges of Plastics not already identified, the Monitor will add the new

discharges demonstrated by the citizen documentation to the discharges documented by the

Monitor, as provided in paragraph 36.

    a.    Subject to each individual seeking access executing a full release and indemnification of Formosa from any and all liability resulting from access, Plaintiffs will have unrestricted access to all discharge channels and the shore areas upstream of the Booms outside Formosa's fenceline for outfalls that discharge into Cox Creek.

38. When there has been a discharge of Plastics, as determined pursuant to paragraph 36,

within twenty-four (24) hours of Formosa learning of the discharge, Formosa will report each

event as a permit violation to the Texas Commission on Environmental Quality ("TCEQ")

identifying the water body (Cox Creek or Lavaca Bay) where Plastics were discharged.

    a.    Formosa will propose a new reporting policy to replace Formosa's existing Standard Operating Procedure to Plaintiffs within thirty (30) Days of the effective date of this Consent Decree that complies with definition of permit

11

violations as ordered by the Court and in this Consent Decree, including that "best management practices" do not constitute compliance with the permit. Plaintiffs will have thirty (30) Days to respond and propose revisions in writing to the proposed new reporting policy. Within ten (10) Days of Plaintiffs' written approval of Formosa's new reporting policy or the Court's determination if the Parties cannot agree on revisions, Formosa will approve the new reporting policy internally to replace the previous Standard Operating Procedure, and provide this new reporting policy as a revised Standard Operating Procedure to TCEQ.

**C.    Remediation of Past Discharges**

39. Within thirty (30) Days of the effective date of this Consent Decree, the Plaintiffs and Formosa will each propose two (2) recommendations for a Remediation Consultant. Within seven (7) Days of exchanging recommendations, the Parties will agree upon the selection of the Remediation Consultant. If the Parties cannot agree, then the determination of the Remediation Consultant will be made by the Court.

40. Formosa will retain the Remediation Consultant, pursuant to a contract agreed to by Plaintiffs in advance, within ten (10) Days of Plaintiffs' written consent to Formosa's proposed Remediation Consultant and the retainer agreement, or the Court's decision.

41. The Remediation Consultant will review remediation methods for Plastics in Cox Creek and Lavaca Bay as follows:

    a.    The Remediation Consultant will review ongoing remediation methods, make site visits, and will produce a Remediation Plan with the goal being a removal of most Plastics from the environment while protecting the Cox Creek and Lavaca Bay ecosystems.

    b.    Formosa will direct Horizon Environmental Services, Inc. ("Horizon") to provide whatever information regarding previous cleanup efforts in Horizon's possession as is requested by the Remediation Consultant.

    c.    The Remediation Consultant will determine whether Horizon's removal of shoreline and submerged vegetation should be remedied by planting of native vegetation to stabilize the banks and what mitigation should be undertaken, if any, in Cox Creek where submerged vegetation has been removed. Formosa will cease any efforts to authorize removal of submerged vegetation from Cox Creek or its shoreline at Texas Parks and Wildlife

Department, and Formosa will withdraw its request within ten (10) Days of the effective date of this Consent Decree.

d.      If the Remediation Consultant determines specific removal methods will cause significant environmental damage that cannot be remediated, the removal methods should not be used.

e.      Plaintiffs may request the opportunity to take the Remediation Consultant up Cox Creek or to Lavaca Bay to show areas of concern. Dr. Jeremy Conkle may accompany Plaintiffs and the Remediation Consultant during this process, or Dr. Conkle may speak directly with the Remediation Consultant to discuss Dr. Conkle's concerns.

42. The Remediation Consultant shall develop and propose a plan to remove Plastics from the Cox Creek and Lavaca Bay ecosystems and, if warranted, for a Cox Creek bank stabilization and revegetation plan. Within sixty (60) Days of being retained, the Remediation Consultant's plan shall be provided to Formosa and the Plaintiffs for review.

43. Formosa and the Plaintiffs will have thirty (30) Days to provide comments on the Remediation Plan and, if requested, the Plaintiffs shall have an opportunity to consult with Formosa and the Remediation Consultant to resolve any concerns.

44.     Formosa and/or the Remediation Consultant will continue to keep daily records of cleanup activities using a form approved by the Plaintiffs. The Remediation Consultant will propose a methodology for estimating the weight and/or volume of Plastics removed on a daily basis to Plaintiffs and Formosa, and Plaintiffs and Formosa shall have ten (10) Days from receipt of the Remediation Consultant's proposed methodology to provide written feedback to the Remediation Consultant. After considering any written feedback from Plaintiffs or Formosa, the Remediation Consultant will approve a final methodology to be used to estimate and record the daily weight and/or volume of Plastics removed on the daily form.

45. Plaintiffs may notify the Remediation Consultant of the presence of Plastics in the Cox Creek or Lavaca Bay ecosystems so those Plastics can be cleaned up. The Remediation Consultant will share any relevant information with Formosa.

46. On a monthly basis, Formosa will make the daily records required by paragraph 44 available on a public website created for that purpose until cleanup has ceased. Plaintiffs may also share this information publicly.

47. Within thirty (30) Days of the conclusion of cleanup efforts as determined by the Remediation Consultant, Formosa or the Remediation Consultant will create a final report that includes a summary of the cleanup, containing the amount of bags, and approximate weight and/or volume of Plastics and debris removed from locations along Cox Creek and Lavaca Bay.

48. Cleanup will continue until the Remediation Consultant determines that most Plastics have been removed from the environment and/or that further remediation efforts may harm the Cox Creek and Lavaca Bay ecosystems.

**D.    Permit and Mitigation Terms**

49.    Within ten (10) Days of the effective date of this Consent Decree, Formosa will request in writing to TCEQ as part of the current Texas Pollutant Discharge Elimination System ("TPDES") permit renewal process that Formosa's renewed TPDES permit contain the following new permit requirements:

   a.    There will be zero (0) discharge of stormwater or other waters, including washwater, from Outfalls 002, 003, 004, 005, 006, 007, 008, 009, 012 and 014 for rainfall events of 5-year 24-hour rainfall (6.8 inches in 24 hours) or less as measured by Formosa's onsite rain gauge. If Formosa discharges stormwater or other waters from these Outfalls, it will notify TCEQ within twenty-four (24) hours of the discharge and include the rainfall amount and outfall number. This requirement will be effective upon the earlier of actual construction of the infrastructure necessary to achieve this requirement or January 1, 2024.

   b.    There will be zero (0) discharge of Plastics from Formosa's Point Comfort Plant. Formosa shall not propose that Plastics in its discharge in any way are part of permitted total suspended solids.

   c.    Formosa will provide Plaintiffs a copy of the letter to TCEQ complying with this term immediately after sending it. Formosa will also provide Plaintiffs copies of any subsequent correspondence and notifications of in

14

person or oral communications to or from TCEQ regarding these proposed permit terms within five (5) Days.

d.      Regardless of whether TCEQ adopts these new permit terms proposed by Formosa, Formosa agrees to comply with the requirements in paragraphs 49 (b) and (c) above, on the effective date of this Consent Decree, and with 49(a) upon the earlier of actual construction of the infrastructure necessary to achieve this requirement or January 1, 2024.

50. Formosa will work with the Texas Department of Transportation ("TxDOT") to facilitate repairs to the SH35 boat ramp on Cox Creek so that the ramp can be used by boats, including motor boats. Formosa will request that TxDOT make the repairs or approve and release Formosa to make the repairs within thirty (30) Days of the effective date of this Consent Decree. Formosa will request that any efforts by TxDOT to repair the ramp include the removal of soil containing Plastics before pavement is laid.

### E.      Environmental Mitigation Projects

**Establishment of the Matagorda Bay Mitigation Trust**

51. Formosa will pay fifty (50) million dollars over five (5) years (ten (10) million dollars per year) for Mitigation Projects to the Matagorda Bay Mitigation Trust. The Parties agree these Mitigation Projects provide environmental benefits to the affected areas. All mitigation funds paid by Formosa pursuant to this Consent Decree will be paid into the Mitigation Trust account, which will be an interest-bearing account.

52. Within twenty-one (21) days of the effective date of this Consent Decree, the Plaintiffs and Formosa will each propose up to two (2) recommendations for a Trustee. Within seven (7) Days of exchanging recommendations, the Parties will agree upon the selection of the Trustee. If the selection of a Trustee cannot be resolved among the Parties within seven (7) Days of the exchange of recommendations, then the determination of the Trustee will be made by the Court.

53. The Trustee shall file all papers necessary to establish the Matagorda Bay Mitigation Trust. Formosa shall annually contribute to the Trust as required by this Consent Decree, with the first payment due fourteen (14) Days after the establishment of the Trust, and each subsequent annual payment due within one (1) week of the anniversary of the initial payment. The cost of administering the Trust, including costs of the Trustee, shall be paid by the funds in the Trust described in paragraph 62.

54. The Trustee shall develop a process to evaluate the use of distributed funds and determine whether there are unexpended funds that must be returned to the Trust. The Trustee will send annual reports to the Parties and make the reports publicly available.

### Environmental Mitigation Projects

55. The total amount for Mitigation Projects will be divided as follows:

56. Twenty (20) million dollars to the Federation of Southern Cooperatives ("the Federation"), a non-profit organization with offices throughout the South, to form a Matagorda Bay Fishing Cooperative ("the Cooperative"), and netting or transportation cooperatives if necessary to support the Fishing Cooperative, under a project called the Matagorda Bay Cooperative Development Project ("the Project").

    a. The Matagorda Bay and San Antonio Bay Systems ("the Bay Systems") have historically had a thriving fishing, shrimping, and oystering industry that has declined due, in part, to pollution of the Bays. The purpose of this Mitigation Project is environmental restoration and protection, specifically to revitalize the marine ecosystems and promote long-term sustainable fisheries by supporting the fishing community to work together to sustain harvests from the Bay Systems in an environmentally responsible manner.

    b. The Federation will work with local fishermen, shrimpers, and oystermen to organize a local Cooperative with the goal of improving the ecosystem and developing sustainable fishing, shrimping, and oystering of the Bay Systems. Funds may be expended for organizing a local cooperative, implementing sustainable fishing practices, promoting mechanisms to create sustainable harvests, analyzing

best markets for environmentally responsible seafood harvests, and determining and investing in necessary infrastructure.

c.  The Federation may make zero-interest loans to the Cooperative(s) for the purchase of infrastructure or other needs consistent with the goal of improving the ecosystem and developing sustainable fishing, shrimping, and oystering of the Bay Systems. Repayments of the loans will go to the Federation to be used on the Matagorda Bay Fishing Cooperative project.

d.  The Federation may determine that formation of other cooperatives, such as netting or transportation cooperatives, are necessary to support a sustainable fishing community and may expend funds towards organizing those cooperatives.

e.  The Cooperative may recommend to the Federation that funds earmarked for the Project be spent in coordination with Texas Parks and Wildlife Department on oyster reef restoration projects in the Bay Systems.

f.  If at any time, it is clear to the Federation that efforts to organize the Cooperative are unlikely to succeed, the Federation shall notify the Trustee.

g.  The twenty (20) million dollars to the Federation shall be paid as follows:
    - $3 million in 2020;
    - $4 million in 2021;
    - $4 million in 2022;
    - $4 million in 2023; and
    - $5 million in 2024.

57. Ten (10) million dollars in total for the development, protection, operation and maintenance of Green Lake Park.

a.  Green Lake is the second largest natural lake in the state of Texas but does not have public access and has not been developed or protected in a way to ensure its natural environment is sustained. Green Lake was recently purchased by Calhoun County. The purpose of this Mitigation Project is environmental restoration and protection, specifically to restore the lake to its historic condition including repairing a recent breach due to Hurricane Harvey and provide funds for the development of public access to the park.

b.  Eight (8) million dollars to Calhoun County to develop, operate and maintain Green Lake Park as a publicly available park without RV hook-ups, but otherwise consistent with the Green Lake Master Plan. Two (2) million dollars will be used to repair the current breach from Green Lake waters, which is causing seepage

from Green Lake into adjacent waters. Any funding left after construction of the Park will be spent on operation and maintenance of the park.

   c.  The ten (10) million dollars to Calhoun County shall be paid as follows:

- $2 million for breach repair in 2020;
- $2 million for Green Lake Park in 2021;
- $2 million for Green Lake Park in 2022;
- $2 million for Green Lake Park in 2023; and
- $2 million for Green Lake Park in 2024.

58. Seven-hundred fifty (750) thousand dollars to the Port Lavaca YMCA to fund camps for children and teenagers in the area, which will be focused on education about how to be a good steward of the local ecosystems and will teach outdoor education and recreation activities.

   a.  Beach erosion and pollution of the Bay Systems and their shores has limited recreational opportunity to children of Calhoun County. The purpose of this mitigation project is environmental education, specifically to give local children the opportunity to learn about and enjoy the local ecosystem.

   b.  Free transportation will be offered to the camps, and children who meet federal low-income standards will be given a scholarship to attend and will be provided free meals and snacks. Funding may also be spent for housing for summer staff to conduct camps and to train staff on the ecology of the Bay Systems. Funding may also be used for the purchase of equipment for the camps.

   c.  The seven-hundred fifty (750) thousand dollars for environmental education and recreation summer camps will be paid as follows:

- $100,000 in 2020;
- $125,000 in 2021;
- $150,000 in 2022;
- $150,000 in 2023; and
- $225,000 in 2024

59. Two (2) million dollars to Calhoun County for erosion control and beach restoration at Magnolia Beach. Funds may be used for purchase and use of clean and uncontaminated fill material, planting of native plants, necessary construction to prevent future erosion, and necessary maintenance to prevent beach erosion.

   a.  Beach erosion and pollution of Lavaca Bay and its shores has limited recreational opportunities for the people of Calhoun County. Magnolia Beach has sustained

harm from erosion and is also a location where Plastics have been found. The purpose of this mitigation project is environmental restoration and protection, specifically to restore Magnolia Beach and allow use by the public.

b. The two (2) million dollars to Calhoun County for erosion control and beach restoration shall be paid as follows:

- $1,000,000 in 2021; and
- $1,000,000 in 2022.

60. One (1) million dollars to the Mission-Aransas National Estuarine Research Reserve ("the Reserve") for the "Nurdle Patrol." The money will be used to support the Nurdle Patrol, for workshops and meetings, and to provide scholarships for attendance, food, transportation and expenses at such meetings.

a. The Reserve sponsors a "Nurdle Patrol," which documents the discharge of plastics on the Gulf Shore. The Reserve also hosts conferences regarding plastics and environmental issues on the Gulf Coast. This purpose of this mitigation project is environmental quality assessment and environmental education, specifically to support the Nurdle Patrol and environmental conferences.

b. The one (1) million dollars for the Reserve Nurdle Patrol shall be paid as follows:

- $200,000 in 2020;
- $200,000 in 2021;
- $200,000 in 2022;
- $200,000 in 2023; and
- $200,000 in 2024.

61. Five (5) million dollars for an Environmental Research Mitigation Project providing for funding for environmental research regarding the Bay Systems, or the river deltas in Calhoun or Jackson Counties feeding into those systems. Funding may be distributed for environmental research topics, including but not limited to, the ecology, pollution, fisheries, or habitat and wildlife restoration of the ecosystems. The Trustee shall set up a system to provide funding for

research, including providing public notice of the funding opportunity and setting up a review

process for applications with researchers in applicable fields.

    a.    The Bay Systems have suffered environmental degradation, including the repeated discharges of pollutants. The purpose of this mitigation project is funding for specific environmental research projects to better understand the extent and impacts of environmental degradation in these ecosystems as well as possible solutions for restoration and mitigation.

    b.    The five (5) million dollars for the Environmental Research Mitigation Project shall be paid as follows:

- $1,000,000 in 2020;
- $1,000,000 in 2021;
- $1,000,000 in 2022;
- $1,000,000 in 2023; and
- $1,000,000 in 2024.

62. Eleven (11) million two-hundred and fifty (250) thousand dollars to the Matagorda Bay

Mitigation Trust, and any additional sums paid by Formosa or returned to the Trust for

redistribution.

    a.    The purpose of this mitigation project is to research, protect, and restore the water bodies and surrounding ecosystems of the Bay Systems or the river deltas feeding into those systems. The Trust shall award funds for the benefit of these waterbodies and the public, including for:

- providing public education about those waterbodies,
- sponsoring youth camps such as described in paragraph 58;
- purchasing land in the watersheds of those waterbodies for conservation purposes, in order to reduce runoff and other pollution into those waterbodies, and/or to improve public access (physical or visual) to them;
- environmental research of those waterbodies as in paragraph 61;
- environmental advocacy, except for litigation;
- habitat restoration; and/or
- additional funding for the dedicated Mitigation Projects described in paragraphs 56-61.

    b.    The Matagorda Bay Mitigation Trust shall have an Award Committee including the Trustee, one representative of Plaintiffs, one representative of Formosa, and

two representatives from environmental groups or institutions. The initial Committee environmental representatives shall be selected from: Surfrider in Corpus Christi, the Mission-Aransas National Estuarine Research Reserve, or the Coastal Alliance to Protect our Environment. The Award Committee shall be established within thirty (30) Days of the establishment of the Trust. If Plaintiffs and Formosa cannot mutually agree on the representatives from the environmental groups, the Trustee will decide.

c.    The Award Committee of the Matagorda Bay Mitigation Trust shall establish a process for application and distribution of the available funds in the Trust.

d.    The eleven (11) million two-hundred and fifty (250) dollars to the Matagorda Bay Mitigation Trust shall be paid as follows:

- $3,700,000 in 2020;
- $1,675,000 in 2021;
- $1,650,000 in 2022;
- $2,650,000 in 2023; and
- $1,575,000 in 2024.

**Public Statements**

63. Any public statement, oral or written, in print, film, or other media, made by Formosa making reference to the Mitigation Projects under this Consent Decree shall include the following language or words to the effect: This project was undertaken in connection with the settlement of the Clean Water Act suit, *San Antonio Bay Estuarine Waterkeeper v. Formosa*.

**V.    COSTS OF SUIT**

64. Formosa will pay Plaintiffs' reasonable attorneys' fees and costs through the effective date of this Consent Decree of $3,030,613.00 and, future reasonable attorneys' fees and costs, including costs for retained experts, for the duration of this Consent Decree for ensuring compliance with this Consent Decree. Plaintiffs will send invoices to Formosa every two (2) months for future fees and costs, and payment will be made within thirty (30) Days of receipt. Plaintiffs' reasonable attorneys' fees and costs, including costs for retained experts, through the

effective date of this Consent Decree will be paid within thirty (30) Days of the effective date of this Consent Decree.

66. Payment of all sums due to Plaintiffs for attorneys' fees or costs shall be made by electronic funds transfer to Texas RioGrande Legal Aid, who will distribute the funds among Plaintiffs' co-counsel.  The payment of past and future fees and costs shall not be construed as a donation to Texas RioGrande Legal Aid.

## VI.    DISPUTE RESOLUTION

66. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

67. Informal Dispute Resolution. Any dispute under this Consent Decree shall first be the subject of good faith informal negotiations. The dispute shall be considered to have arisen when the Plaintiffs or Formosa sends the other Party a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter(s) in dispute. The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then either Party may ask the Court for final resolution of the issue.

68. Judicial Review. Either Formosa or Plaintiffs may seek judicial review of any dispute under this Consent Decree by filing with the Court and serving on the other Party, a motion requesting judicial resolution of the dispute arising under this Consent Decree.

69. No Effect on Deadlines. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Formosa or the Plaintiffs under this Consent Decree, unless and until final resolution of the dispute so provides.

## VII.    MISCELLANEOUS

70. This Consent Decree is entered in full and final settlement of the civil claims for violations of the Clean Water Act, 33 U.S.C. 1365, et seq., as alleged in the Complaint filed by Plaintiffs up through the date of entry of this Consent Decree, but shall not affect rights or obligations not specifically addressed herein, as to which the Parties specifically reserve their rights.

71. Formosa will review Plaintiffs' expert reports that have been produced or filed as confidential and Plaintiffs' Findings of Fact filed under seal in the lawsuit to determine which language needs to remain confidential within thirty (30) days of the effective date of this Consent Decree to remove any restriction on use of Plaintiffs' expert reports or Findings of Fact. If the Parties cannot agree, any dispute over confidentiality may be taken to the Court for resolution.

## VIII.    CONTINUING JURISDICTION

72. The Court shall retain jurisdiction to effectuate and enforce the terms and conditions and achieve the objectives of this Consent Decree, and to resolve disputes arising hereunder as may be necessary or appropriate for the construction, modification, implementation, or execution of this Consent Decree.

## IX.    MODIFICATION

73. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties and with approval by the Court.

## X.    TERMINATION

74. Request for Termination. Formosa may serve upon Plaintiffs a request for termination after implementation and testing of all the Engineering Consultant's improvements (in Section IV(A)), after completion of all requirements in Section IV(D), and after the Monitor, Plaintiffs,

and cleanup records have all documented no discharges of Plastics as defined in paragraph 36 of this Consent Decree into either Cox Creek or Lavaca Bay for six (6) consecutive months.

75. <u>Joint Motion for Termination</u>. Following receipt of the request for termination, the Parties shall confer informally concerning the request and attempt in good faith to address any disagreement that the Parties may have as to whether Formosa has complied with the requirements for termination of this Consent Decree. If the Plaintiffs agree that this Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint motion to terminate this Consent Decree.

76. <u>Formosa Motion for Termination</u>. In the event that the Parties cannot agree as to whether Formosa has complied with the requirements for termination of this Consent Decree, Formosa may move to terminate this Consent Decree on its own motion to the Court.

77. <u>Survival of Paragraph 49</u>. In the event the Court grants termination of this Consent Decree and the TCEQ has not acted on the Formosa requests set forth in paragraph 49 or the TCEQ has acted on Formosa's renewal of Formosa's TPDES permit and not expressly incorporated the changes requested by Formosa pursuant to paragraph 49, Formosa and Plaintiffs agree that the requirements in paragraphs 49 (a) and (b) will survive this Consent Decree and remain enforceable. Discharges in violation of these subparagraphs following the termination of this Consent Decree will result in a payment by Formosa to the Trust of $10,000 for each discharge. In the event of the earlier dissolution of the Trust, the payment will be to the recipient(s) designated by the Trust's dissolution document.

## XI.    NOTICES AND SERVICE OF PROCESS

78. Unless otherwise specified in this Consent Decree or otherwise changed by notice to all Parties, whenever notifications, submissions, or communications are required by this Consent

Decree, they shall be made in writing and addressed as follows, using electronic mail where such addresses are provided:

As to the Plaintiffs:

     1) Erin Gaines
     TEXAS RIOGRANDE LEGAL AID
     4920 N. I-35
     Austin, TX 78751
     512-374-2739
     egaines@trla.org

     2) Diane Wilson
     wilsonalamobay@aol.com

As to Formosa:

     1) John A. Riley, Esq.
     Holland & Knight LLP
     111 Congress Ave., Suite 540
     Austin, TX 78701
     John.Riley@hklaw.com

     2) Vice President/General Manager
     Formosa Plastics Corporation, Texas
     201 Formosa Drive
     Point Comfort, TX 77978

     3) Assistant Vice President, Environmental Division
     Formosa Plastics Corporation, U.S.A.
     9 Peach Tree Hill Rd.
     Livingston, NJ 07039

## XII.    SIGNATORIES

79. Each of the undersigned representatives certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree, to execute this Consent Decree, and to legally bind to this Consent Decree the Party, affiliate or entity he or she represents.

IT IS SO ORDERED:

Dated and entered this _____ day of _____, 20__.


_____
HONORABLE KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE

**THE UNDERSIGNED** Parties enter into this Consent Decree and submit it to the Court for entry.

Amy R. Johnson
State Bar No. 10679550
LAW OFFICES OF AMY R. JOHNSON
5836 SE Madison St.
Portland, OR 97215
503-939-2996 Telephone
amy@savagejohnson.com
*Attorney for Plaintiff S. Diane Wilson*

David Frederick
State Bar No. 07412300
FREDERICK, PERALES, ALLMON &
ROCKWELL, PC
1206 San Antonio
Austin, TX 78701
(512) 469-6000 Telephone
dof@lf-lawfirm.com
*Attorney for Plaintiffs S. Diane Wilson and
San Antonio Bay Estuarine Waterkeeper*

Erin L. Gaines
State Bar No. 24093462
Jennifer Richards
State Bar No. 24107975
Enrique Valdivia
State Bar No. 20429100
TEXAS RIOGRANDE LEGAL AID
4920 N-I35
Austin, TX 78751
512-374-2739 Telephone
egaines@trla.org
*Attorneys for Plaintiff S. Diane Wilson*

David T. Bright
State Bar No. 02991490
Federal Bar No. 8628
SICO HOELSCHER & HARRIS, LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
(361) 653-3300 Telephone
*Attorney for Plaintiffs S. Diane Wilson and
San Antonio Bay Estuarine Waterkeeper*

Dated: 10/14/2019

**THE UNDERSIGNED** Parties enters into this Consent Decree and submits it to the Court

for entry.

John A. Riley
Texas State Bar No. 16927900
HOLLAND & KNIGHT LLP
111 Congress Ave., Ste. 540
Austin, Texas 78701
Tel: (512) 954-6525
Email: john.riley@hklaw.com
*Attorneys For Defendants, Formosa Plastics Corp., Texas And Formosa Plastics Corp., U.S.A.*

Dated: 10-14-19